## A. A. LONG v. NORTH BRITISH ETC. INS. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY.

Argued April 21, 1890—Decided January 5, 1891.

1. A provision in an insurance policy making actual payment of premium a condition of its validity, may be waived by the issuing agent, so far as to give time for such payment, notwithstanding a prohibition in the policy of any waivers of conditions by agents, where the established course of dealing between all parties has been for the agent to extend such credits, he becoming the accepted debtor of the company for the premium, and the assured becoming his debtor therefor: Lebanon Ins. Co. v. Hoover, 113 Pa. 591.

(a) In an action on a fire policy, regularly made out and approved by the defendant company, the plaintiff testified that the defendant's agents agreed to give him thirty days' time for the payment of the premium; that he left the policy with them until it should be paid for, and that this arrangement was in accordance with the previous course of dealing between him and them. The agents testified for the defendant that the plaintiff objected to the rate, and went away saying he would consider whether to take the policy.

(b) Before any further communication between the plaintiff and the agents, the property described in the policy was destroyed by fire. After the

fire, but within the period of credit named, the plaintiff sent to one of the agents a check for the premium, which was retained without objection until said period expired. The premium had been charged upon the agents' books against the plaintiff, and they had charged themselves with it in their account with the company. These charges were allowed to stand for eleven days after the receipt of the check:

2. In view of the previous dealings between the plaintiff and the agents. their possession of the policy and the non-payment of the premium thereon were consistent with his allegation that a contract of insurance had been entered into; and there was sufficient evidence in the plaintiff's favor to make it the duty of the court to submit to the jury the question whether a contract of insurance existed between the plaintiff and the defendant company.

3. An insurance agent who, testifying for his principal, has denied that the plaintiff accepted an insurance policy, under an agreement that he should have time to pay the premium, and who admittedly received from the plaintiff, after the destruction of the property and without objection, a check for the premium, and held it for two weeks, may be asked on cross-examination whether, if no fire had occurred, he would not have insisted on the payment of the check.

4. When it is proposed by the defendant to prove declarations by the plaintiff's son-in-law, while engaged in the performance of a certain act in the plaintiff's absence, it must appear, or there must be an offer to show, that the declarant was acting at the time for the plaintiff, or by his authority, and the offer must embrace at least the substance of the declarations, that the court may judge of their relevancy and materiality : Williams v. Williams, 34 Pa. 312.


Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 110 July Term 1889, Sup. Ct.; court below, No. 407 September Term 1888, C. P.


On July 30, 1888, A. A. Long brought assumpsit against the North British and Mercantile Insurance Company of London and Edinburgh, upon a policy of insurance against fire, dated November 1, 1887. The defendant's plea was non-assumpsit.

At the trial on May 22, 1889, the following facts were shown : A. A. Long, the plaintiff, was the proprietor of a store at Olanta, Clearfield county, in 1887, and held a policy of insurance against fire upon his stock of goods for $2,000, issued by the defendant company through its agency at Curwensville, and which expired on November 1, 1887. The testimony of the

plaintiff tended to show that a few days before the expiration of that policy, J. H. Mead & Co., the defendant's agents at Curwensville, wrote to the plaintiff, calling his attention to the policy, and saying that unless they should hear from him to the contrary, they would renew it; that on November 8, 1887, the plaintiff went to see J. H. Mead & Co., and was informed that they had written up a new policy for him, dated November 1, 1887, instead of simply renewing the old one, on account of the fact that the company had raised its rates, and they produced the new policy and showed it to the plaintiff; that the plaintiff, referring to the increase in the rate, remarked, · in a laughing way, "If that is the way you are going to stick it on, I will have to do as Mr. Levi Bloom does, carry my own insurance for awhile;" that Mr. Mead, one of the agents, then went on to explain the action of the company on the subject of rates, when the plaintiff replied that he knew all about that, having been informed of it previously by a Mr. Helmbold; that, after an interruption in their conversation, Mead asked the plaintiff if he wished to take the policy along with him that day, to which the plaintiff replied that he did not think he would, as he was not prepared to lift it, and did not like to lift it without paying for it; that the plaintiff then, after stating that he was in a hurry and must leave, said to Mead, "I suppose I can have thirty days to remit for the policy," and Mead answered, "You can have until the tenth of next month, as we seldom remit before that time;" that the plaintiff then remarked, "I can pay for it most any time for that matter," and left the office.

The custom of Mead & Co. was to carry policies for thirty days or more, if requested by the insured, he becoming their debtor, and they becoming debtor to the company, for the amount of the premium. The plaintiff testified that he had been insured with this agency for three or four years before November, 1887, and that the agents always gave him all the time he wanted for the payment of premiums, though he never took more than thirty days to pay for any policy; and that the policies were generally left with the agents until paid for.

The testimony for the defendant as to what took place on November 8th, tended to prove that the plaintiff objected to the increased rate at which the policy was written and did not

agree to accept it; that when Mead offered to give him time for the payment of the premium, the plaintiff said that time was not so much a matter of importance to him as the rate; that he left the office, saying that he would think over the matter, and if he concluded to take the insurance he would let the agents know; and that he never notified them of his intention to take it until after the destruction of the property described in it.

The policy of November 1, 1887, contained the following provisions:

"This company shall not be liable by virtue of this policy, or any renewal thereof, until the premium therefor be actually paid."

"The use of general terms, or anything less than a distinct specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction therein."

"It is further understood and made part of this contract, that the agent of the company has no authority to waive, modify or strike from this policy, any of its printed conditions, . . . . nor, in case this policy shall become void by reason of the violation of any of the conditions thereof, has the agent power to revive the same, and that a new policy, intended to replace any policy so made void, shall be of no effect until its actual issue and delivery thereof to the assured, any contract by parol, or understanding with the agent, to the contrary notwithstanding."

The policy had been approved by the company and it was entered on the books of Mead & Co., the premium $40, being charged against the plaintiff in their favor, and also charged against the agents in favor of the company. These entries were dated November 1, 1887, but the date at which they were actually made, was not disclosed by the testimony. The defendant's agents testified, on its behalf, that all policies written by them would appear upon their books in this way, and that if a policy should be canceled, or not accepted by the insured, the accounts upon the books would be balanced by the entry of credits for the amount of the premium.

On the evening of Saturday, November 26, 1887, the plaintiff's store and its contents were destroyed by fire. On the

succeeding morning, the plaintiff went to see C. A. Rorabaugh, a member of the firm of J. H. Mead & Co., and informed him of the fire. The plaintiff testified that Rorabaugh said on that occasion that he was sorry that the plaintiff had not sent in a check for the premium before the fire; that he believed the intention of the plaintiff was to lift the policy, but that he was afraid, if the company should find out that the policy had not been paid for before the fire, they would not acknowledge liability. The plaintiff testified, also, that Rorabaugh instructed him to send in a check for the premium, dated before the fire, whereupon the plaintiff went to Olanta, wrote a check to Rorabaugh's order for $40, dating it November 26th, and gave it the same afternoon, Sunday, November 27th, to J. R. Bloom, his son-in-law and clerk, to take it to Rorabaugh.

Rorabaugh, testifying for the defendant, contradicted the testimony of the plaintiff as to the nature of the conversation between them on November 27th. He testified, further, that he received the check at his house in Curwensville, on the morning of November 28th, from J. R. Bloom, and that, when received, it was enclosed in a stamped envelope, with the stamp canceled and bearing the post-mark of the Olanta post-office, dated November 26th, addressed to himself, and containing, besides the check, a letter from the plaintiff dated November 26, 1887, transmitting the check "for $40, for insurance policy for $2,000." The plaintiff, on being shown this letter, admitted that he wrote it, but denied that he wrote the address on the envelope. Witnesses for the defendant testified that in their opinion the latter was written by the plaintiff.

W. J. Owens, a witness called by the defendant, having testified that he was the post-master at Olanta from December, 1886, to May, 1889, the defendant made the following offer:

Defendant proposes to ask W. J. Owens, the witness on the stand, who was post-master at Olanta, Clearfield county, Pa., during the month of November, 1887, if A. A. Long or J. Roll Bloom, his son-in-law and clerk, procured any U. S. Government stamped envelopes or envelope at said post-office on Sunday, November 27, 1887, and did also procure the Olanta post-office stamp, bearing date November 26, 1887, to be placed on any envelope or envelopes, and if so, under what circumstances and what became of the same, and if the witness can

identify the envelope in evidence which C. A. Rorabaugh testified he received from J. Roll Bloom, addressed to said Rorabaugh and written to Rorabaugh by A. A. Long and containing the check for $40, to the order of C. A. Rorabaugh, which check is in evidence; and further to ask the witness what time the mails left Olanta post-office. This, for the purpose of proving that the post-office stamp was fraudulently procured to be put on the envelope in question; that the date said envelope bore was fraudulently made to appear as having been mailed at Olanta, November 26, 1887; that it was not mailed at said post-office and did not pass through the mail, but was carried to Rorabaugh by J. Roll Bloom at the instance of A. A. Long, the plaintiff; and for the further purpose of showing that said letter and envelope, with false dates thereon, were thus procured, written and sent, for the purpose of making it appear the premium on the policy of insurance in question had been paid before the fire occurred.

Objected to.

By the court: Objection overruled, evidence admitted so far as to permit witness to testify to the actual facts done, but not to any declarations of J. Roll Bloom, made in the absence of Mr. Long, the plaintiff; exception.[3]

The witness then testified that on Sunday, November 27, 1887, J. R. Bloom procured from the witness three stamped envelopes, and that at Bloom's request the witness post-marked all three of them, the date of the post-office stamp not having been changed from the date of the day before, and that Bloom took away with him the envelopes so stamped. Being shown the envelope identified by Rorabaugh as the one which contained the check handed to Rorabaugh by Bloom, Owens testified that, in his opinion, " it must be one of the three."

Rorabaugh, when he received the check on November 28th, took it with him to the office of the firm, and called Mead's attention to it. It remained there for some days, and finally Rorabaugh returned it to the plaintiff by mail, inclosed in a letter bearing date December 12th. On December 10th, the plaintiff made a tender to Mead & Co., of $40 in lawful money, as the premium upon the policy, which tender was refused. Rorabaugh testified that according to his recollection, he had sent the plaintiff's check back before this tender was made,

Charge of Court below.

and he might have made a mistake in dating the letter which accompanied the check. Upon cross-examination he was asked the following question:

Q. Suppose no fire had occurred, would you have insisted on the payment of that check by Mr. Long? A. Well, if he had accepted the policy I would.

Mr. Fielding: We object to the question.

By the court: Objection overruled; exception.[2]

Mr. Murray: Suppose that no fire had occurred, would you have insisted upon the payment of that check by Mr. Long? A. I suppose if no fire had occurred we would liked to have used the check. Q. There would have been no trouble at all if there had been no fire? A. I suppose not. Q. Was not his check as good as the money? A. We considered the check good.

The premium on the policy remained charged on the books of Mead & Co. against Long, and charged against Mead & Co. in the account kept by them with the company, until December 9, 1887, when, by direction of E. P. Piper, the company's special agent, who had come on to investigate the plaintiff's claim, they credited the amount of the premium in those accounts, and returned the policy to the company as an unaccepted one.

At the close of the testimony, the court, KREBS, P. J., charged the jury in part as follows:

The company does not ground its defence upon any want of proof of loss or want of notice of the loss, but upon the allegation that no contract of insurance was ever entered into by the company with A. A. Long, the plaintiff. The first and the important inquiry in this case, to which your minds must be directed when you go to your room to deliberate upon the testimony in the cause, is whether or not there was a contract made between the company, acting through its agents, J. H. Mead & Co., on the one side, and Mr. Long on the other. . . . .

It is alleged on the part of the plaintiff that the agents of the company notified him that the policy he then had would expire on the first of November, 1887, and that, unless they were notified to the contrary, they would write a new policy, or renew that policy, whatever the terms were. Both the plaint-

Charge of Court below.

iff and the witnesses on the part of the defendant agree that
no notice was received by the agents of the company in answer
to that letter, until the eighth of November, 1887, when Mr.
Long went to the office of the agents in Curwensville. Now,
the situation of the plaintiff and defendant, at that time, the
eighth of November, 1887, was that the agents of the company
had notified Mr. Long of the expiration of the old policy, and
of their intention to write a new policy unless they were noti-
fied to the contrary.

A serious dispute arises as to what occurred in the office of
the agents of the company on the eighth day of November, 1887.
I do not intend to state the facts in this case. . . . . They are
all to be considered, all the evidence on both sides, in deter-
mining what was the result of that meeting, whether or not it
resulted in a contract between these parties by which Mr.
Long agreed to pay $40 premium, and in consideration of that
to be insured upon this property to the extent of $2,000 against
loss by fire. . . . . If such a state of facts existed there, as the
result of that interview, with what had occurred in the writing
of this letter, then there would be a valid and binding contract
of insurance, if the other matters and things that entered into
it were complied with.

[There is a condition in this policy which provides that
"this company shall not be liable by virtue of this policy, or
any renewal thereof, until the premium therefor be actually
paid." As bearing upon the effect of that condition upon the
contract in this case, I instruct you, that, inasmuch as this pol-
icy was signed by the manager or director required by the
company to sign it, and put in the hands of J. H. Mead & Co.,
their agents, to be filled up by them for any person that might
solicit insurance from that company, and countersigned by J.
H. Mead & Co., at Curwensville, in due form, that J. H. Mead
& Co. had the right and power to waive that condition in the
policy and to agree that it might be paid at a future time.] [7]
In other words, if you believe from the testimony in the cause,
as claimed by the plaintiff, that the agents of this company
agreed to give him until the 10th of December to pay the pre-
mium, and he tendered payment, or offered to pay it, within
that time, and there was, in other respects, such an arrange-
ment and agreement between these parties as made him respon-

Charge of Court below.

sible to pay the premium, so that the company could have sued
him and recovered the amount, then this policy is good and
binding, although the premium was not actually paid in cash
to the company or its agents.  [So that, as there is no dispute
here about the fact of the tender of the money on the tenth of
December, 1887, and no dispute that a check was received by
Mr. Rorabaugh, one of the firm of J. H. Mead & Co., agents of
the defendant company, those two things, or either of them,
are equivalent to a payment.   The check would be equivalent
to a payment, because Mr. Rorabaugh did not present it; there
is no evidence, or at least he did not testify, that he was re-
fused payment at the bank on which it was drawn.   He said
he considered Mr. Long's check good.] [8]

[Now, gentlemen of the jury, if you believe from the testi-
mony in the cause that these agents did agree to extend the
time until the tenth of December, 1887, and this check was
made, although it may have been delivered or sent to the com-
pany, that is, to the agents of the company, after the fire oc-
curred, it still would be a good payment of the premium and
binding upon the company and make them responsible for this
loss.] [9]

[There has been comment on the one side and the other in
regard to the check being dated on the 26th of November, 1887,
when it was actually drawn on Sunday, November 27, 1887.
If you find from the evidence, because you must determine it
from all the evidence in the cause, if you determine that there
was such a contract, such an arrangement between these parties,
as we have instructed you the law requires, before the fire, on
the eighth day of November, 1887, because that was the time
when these parties were last together, it makes no difference as
to the dating back of this check so far as the contract is concern-
ed.   It would not invalidate the contract, if the contract had an
existence at that time.   The reason why the evidence was ad-
mitted was because it was a circumstance which the jury might
consider, and had a right to consider, as bearing upon the ques-
tion whether or not there was a contract at all.   That was the
view in which the testimony was admitted, and not as having
any effect upon the contract, if the contract was found by the
jury to have actually been made, and to have been in existence
on the eighth of November, 1887.] [10]

Charge of Court below.

Now, gentlemen of the jury, I will simply reiterate that the first and important question is whether or not there was a contract of insurance consummated between the plaintiff and defendant, beginning with the letter written by the agents of the company and the interview on the eighth of November, 1887. [If there was such a contract, and, as we have instructed you, such a relation entered into between these parties that the company by suit could have compelled Mr. Long to pay that premium, and he, in pursuance of the arrangement, made with the agents of the company, was to have until the tenth of December, 1887, to pay that premium, and within that time sent his check to either member of the firm, it makes no difference whether it was drawn in the name of the firm or not, if it was received by either member of the firm; and if on or before the tenth of December, 1887, he tendered them the money, the company would be bound to pay for this loss.] [11] . . . . .

The defendant has asked us to instruct you upon the following propositions:

1. The fact that J. H. Mead & Co., agents of the defendant company, had charged the premium on the policy in question to A. A. Long, and had also credited the premium on their account with the defendant company, in view of the explanation made by Mead & Co. of the mode of conducting their business, and charging and crediting policies not accepted by the assured, is not of itself sufficient to make out a contract of insurance between the plaintiff and the defendant company.

With that I read the next point:

2. That there is nothing contained in the books of the agents, J. H. Mead & Co., in relation to this matter, which shows any contract relation or insurance to have existed between the plaintiff and the defendant company, if the jury believe the explanation of the mode of keeping the accounts, as made by J. H. Mead and C. A. Rorabaugh.

Answer: Now gentlemen of the jury, in answer to these points, we say that the books, and the entries in them, do not of themselves constitute a contract between these parties, but they are evidence for the jury to consider in determining whether or not there was a contract, taken with the explanation made by the agents of the company, as to their manner of keeping books. It is now well-settled law in Pennsylvania

### Charge of Court below.

that if an insurance company keep an account with their agents, by which they charge their agents with policies put into their hands, and make them debtor to the company for the premium, and the agents in turn issue those policies to other persons, and give credit to those persons, or time in which to pay the premium, and a loss occurs, the company is liable for that loss, although the premium may not have been actually paid until after the loss. The company could not then refuse to accept the premium and refuse to carry out the contract. You are to consider these books, with the explanation given by the agents who kept them, as to their manner and purpose in keeping them as they did, as bearing upon the question of a contract in this case. The books do not of themselves make out a contract of insurance, but are simply evidence for the consideration of the jury.[6]

6. That under the terms of the policy claimed on in this case, it was necessary for the plaintiff to have paid the premium thereon, in order to complete a binding contract, in the absence of proof that such payment was waived by the agents and a contract was made and concluded by which he was to have a stipulated time wherein to pay the premium, and the policy considered delivered.

Answer: If I understand the point, I affirm it. But fearing that my understanding may not be as it is drawn, I say this: That the agent who wrote the policy had the power to waive the prepayment of the premium, and if the jury find that there was such an actual waiver of the prepayment of the premium, then the contract, if there was one, would be valid and binding without an actual prepayment of the premium. So far as considering the "policy delivered," as mentioned in this point, I instruct you that it is not necessary that the policy itself should have actually been delivered over to Mr. Long. If he chose, he may have left it with the agents of the company. If such a contract as I have mentioned was made, its validity and force did not depend upon the actual delivery of the policy to him.[5]

7. If the jury believe from the evidence that the plaintiff drew a check on Sunday for the premium and antedated it; that he made it payable to C. A. Rorabaugh, and not to J. H. Mead & Co., the duly authorized agents of the defendant com-

pany; that the check was contained in an envelope bearing the post-mark of Olanta, November 26, 1887, the day prior to the fire; the manner in which J. Roll Bloom, who delivered the envelope containing the letter of Long to Rorabaugh, obtained by him from the postmaster at Olanta, as stated by W. J. Owens, postmaster, with the post-mark on it, and the effort to create the appearance that the letter containing this check had passed through the regular course of the mail, as if dated and mailed on the 26th of November, before the fire; these facts, if believed, are evidences of bad faith on the part of the plaintiff, and should be taken as evidence against him.

Answer: We answer that point by saying that these are circumstances which the jury have a right to consider as bearing upon the question, whether or not there was any contract in existence between these parties. It was for this purpose, and no other, that they were admitted in evidence.[4]

9. That the contract of insurance set up and claimed to have existed by the plaintiff in this case, is not so free from doubt and uncertainty, under all the evidence in the cause, as to make out a valid, legal, and binding contract, and your verdict must be for the defendant.

Answer: We decline to so instruct you. It is a question of fact for the jury to determine, from all the evidence in the cause, whether or not there was a contract.[1]

The jury returned a verdict in favor of the plaintiff for $2,003.73, and judgment was entered thereon; whereupon the defendant took this appeal, assigning for error:

1. The answer to defendant's point.[1]
2. The admission of plaintiff's offer.[2]
3. The ruling upon the defendant's offer.[3]
4–6. The answers to defendant's points.[4 to 6]
7–11. The parts of the charge embraced in [ ] [7 to 11]

*Mr. Frank Fielding*, for the appellant:

1. There is not a scintilla of evidence in the case, tending to show that any contract was made, outside the testimony of the plaintiff himself, and that testimony clearly shows that when the agents offered him credit, he refused to take the policy. According to his own statement, the strongest expression he

used was, " I suppose I can have thirty days to remit for the policy." This was not an agreement to take it, and would not have been sufficient, in the face of the fact that he declined to accept the policy on credit, to enable the company to maintain an action against him for the premium. His language about carrying his own insurance shows the truth of our contention that he declined to accept the policy because he was objecting to the rate.

2. Moreover, his conduct in the matter of antedating the check and fraudulently arranging to make it appear that it was mailed prior to the fire, is sufficient to convince any unbiased mind that there was no contract between him and the company. He asserted that Rorabaugh encouraged him to antedate the check. This Rorabaugh denied. But suppose the agent did collude with him to defraud the company; this could create no liability on the part of the company, and could confer no advantage on the plaintiff: Smith v. Insurance Co., 24 Pa. 323. Our position in this case is not in conflict with the decisions in Elkins v. Insurance Co., 113 Pa. 386, and Lebanon Ins. Co. v. Hoover, 113 Pa. 591. The case is more like Schaffer v. Insurance Co., 89 Pa. 296, which ruled that a mutual insurance company is not bound by a contract of insurance, till the liability of the insured to contribute to losses is fixed.

3. In the present case, the inference to be drawn from the facts was a question for the court, and not for the jury: Royal Ins. Co. v. Beatty, 119 Pa. 6. It was essential that the plaintiff show an aggregatio mentium, a completed contract binding on each party: Mut. L. Ins. Co. v. Young, 23 Wall. 106; 1 Wood on Fire Insurance, 17, 18, 21, 23; Wood v. Insurance Co., 32 N. Y. 619; Real Est. Ins. Co. v. Roessle, 67 Mass. 337. We submit that such a contract was not established. The plaintiff's testimony establishes, at most, an unaccepted offer of insurance, and the case, therefore, should not have been submitted to the jury. The second assignment should be sustained; what the agent might think he would have done under a hypothetical state of facts, was entirely irrelevant. And our first, second and sixth points should have been affirmed unqualifiedly.

4. It was entirely competent to show the declarations of Bloom at the time he got the envelope from the postmaster.

Arguments.

It is beyond doubt that Long and Bloom were acting in collusion, in endeavoring to make it appear that the letter containing the check had been mailed before the fire. A conspiracy between them was sufficiently established, and the acts and declarations of Bloom in perpetrating the fraud were just as binding on Long as if the latter had been present. That the conduct of Long in the matter of the check was evidence of bad faith, and evidence against him on the question whether a contract existed, is too clear for argument. Our third point, therefore, should have been affirmed without qualification. And the court committed error in virtually separating, by the instruction embraced in the tenth assignment, these collusive facts of fraud from the question whether there was a contract.

*Mr. Thomas H. Murray* and *Mr. R. D. Swoope* (with them *Mr. Cyrus Gordon*), for the appellee :

1. The principal and perhaps the only point in the case is whether, upon the whole evidence, there was a question for the jury. It is well settled that pre-payment of the premium may be waived, either expressly or by implication arising from circumstances or from course of dealing : Universal Ins. Co. v. Block, 109 Pa. 535 ; Franklin Ins. Co. v. Colt, 20 Wall. 561 ; Lebanon Ins. Co. v. Hoover, 113 Pa. 591. The leaving of the policy with the agent during the period of credit, does not invalidate the insurance, although there is no actual manual delivery to the insured : Bodine v. Insurance Co., 51 N. Y. 117 (10 Am. Rep. 566). While the assured must have bound himself to pay the premium, this need not be by express contract ; the agreement may be implied from conduct and circumstances : Pollock on Contracts, 81, 82, 86 ; Joyce v. Swan, 17 C. B., N. S., 84 ; Franklin Ins. Co. v. Colt, 20 Wall. 560 ; 1 Wood on F. Insurance, § 10. When the testimony, in any reasonable view that can be taken of it, justifies the verdict, this court will not disturb the judgment : Thomas v. Thomas, 21 Pa. 315 ; Wenrich v. Heffner, 38 Pa. 207 ; McKee v. Bidwell, 74 Pa. 218 ; Elkins v. Insurance Co., 113 Pa. 387.

2. If the assured made himself liable for the premium, the company was liable on the policy. Hence, the inquiry whether the agents would have used the check for the premium, if no fire had occurred, was pertinent, as throwing light upon whether

they did not consider him bound for the payment of the premium. The ruling excluding declarations of Bloom, made in the absence of Long, was right, because there was no proof or offer of proof that Long authorized the declarations, or that they were within the scope of any agency: Irvine v. Buckaloe, 12 S. & R. 35; and because the offer was not sufficiently specific to make the competency and materiality of the excluded declarations apparent. In a much stronger case, a somewhat similar offer was rejected: Lord Melville's Case, 29 Howell's St. Tr. 764. To instruct the jury that certain alleged facts were evidence of bad faith would have been palpable error: Heslop v. Heslop, 82 Pa. 537. It is proper to add explanations or qualifications to the affirmance of an obscurely worded point: Pistorius v. Commonwealth, 84 Pa. 158. The books of the agents are evidence in the plaintiff's favor: Lebanon Ins. Co. v. Hoover, 113 Pa. 591. These agents had power to waive prepayment of the premium: Riley v. Insurance Co., 110 Pa. 144; Elkins v. Insurance Co., 113 Pa. 387.

OPINION, MR. JUSTICE McCOLLUM:

The vital question in this case is whether the evidence was sufficient to justify the jury in finding a contract of insurance. In passing on this question, the previous dealings and relations of the parties, as well as their acts and declarations bearing directly on the pending dispute, must be taken into consideration. In other words, the latter must be construed in the light of the former.

Long was engaged in the mercantile business at Olanta, and held a policy of insurance issued by the appellant company on his stock of goods, for $2,000. This policy expired on the first of November, 1887, and, prior to that time, the company, through its agents at Curwensville, informed him by letter that the insurance would be renewed if he did not give notice to the contrary. As he did not give any notice of a desire to terminate the insurance, the policy in suit was issued by the company and forwarded to its agents, who charged the premium to him, and in their account with the company charged themselves with it. Whether these charges were made before their interview with him on the eighth of November, the testimony does not inform us; but we learn from it that their

Opinion of the Court.

custom was to carry policies thirty days or more, if requested by the assured, in which case he became their debtor for the amount of the premium, and the company accepted them as its debtor for it.   In their former transactions with Long, he was allowed thirty days in which to pay the premium, and his policy remained with them; but it was mutually understood that it was in force for the term described therein, as effectually as if he had paid the premium upon it and taken it away. It was on this understanding that the credit was sought and granted, and that the premium was subsequently paid and received.   In view of their custom, and previous dealings with the appellee, their possession of the policy in suit and the non-payment of the premium thereon were consistent with a contract of insurance and his claim that he was their debtor for the premium and they were keeping the policy for him.

When he called at their office on the eighth of November he did not allege that the renewal of his insurance was not authorized by him, nor refuse to pay the premium for it, but he inquired if he could have thirty days to remit for it, and was assured that he could have until the tenth of December. They admit that but for the fire they would have accepted the premium from him at any time on or before that day.   The fire occurred on the 26th of November, and on the 28th they received his check for the premium and held it until the twelfth of December, without intimating to him that it was not satisfactory.   Upon their books this premium was charged to him under date of November first, and credited under date of December 9th, and in their account with the company a corresponding charge and credit appear.   These credits were entered after the fire and by the direction of special agent Piper, who was charged with the duty of investigating the claim in dispute.

The foregoing facts are conceded or appear in the uncontradicted evidence, and assist materially in interpreting and reconciling the conflicting testimony.   We are satisfied upon a careful examination and study of all the evidence that it was the duty of the court to submit to the jury the question whether a contract of insurance existed between the contracting parties.   The authority of the agents to waive the condition in the policy respecting the payment of the premium, was

Opinion of the Court.

conceded in the appellant's sixth point and is not questioned here. It could not be successfully disputed upon the admitted course of dealing between all the parties concerned: Lebanon Ins. Co. v. Hoover, 113 Pa. 591.

The ruling complained of in the second specification was upon a question in the cross-examination of appellant's agent and witness, who had testified that there was no agreement of insurance, and who had received, after the fire and without objection, the appellee's check for the premium, and held it two weeks, without presenting it for payment. The question was designed to test the accuracy of his previous statement, and his intelligence and integrity touching the matters under investigation, and we are not prepared to say that it exceeded the limits of a proper cross-examination.

There is no error in the ruling on the offer of evidence contained in the third specification. It did not appear, and the offer did not propose to show, that Bloom was acting for Long or by his authority in obtaining the stamped envelopes. But if he had been so acting, and the appellant desired to prove his declarations, the offer should have embraced at least the substance of them, that the court might judge of their relevancy and materiality: Williams v. Williams, 34 Pa. 312.

The remaining specifications do not require separate consideration. The answers to the appellant's points in relation to the delivery of the policy, the antedating of the check, and the explanation of the book entries, were fair, full, and correct, and, as it is admitted that there was a tender of the premium on the tenth of December, it is profitless to inquire whether the receipt and retention of the check were the equivalent of it.

The judgment is affirmed.