## Pennsburg Manufacturing Company *v.* Pennsylvania Fire Insurance Company.

*Insurance—Fire insurance—Delivery of policy—Possession of policy.*

No particular form is required to effect a delivery of a deed or other writing. It may be by acts merely, by words merely, or by both combined, but in all cases an intention that it shall be a delivery must exist.

The fact that although a policy of fire insurance was executed by the company's officers and countersigned by its local agent, it was not delivered to the insured by any one having authority from the company or its agent, but was obtained on the day after the insured premises were burned,

by the insured, from the agent's clerk in the agent's absence, and without notice to either that a fire had occurred, rebuts the prima facies arising from plaintiff's possession of the policy.

The fact that a policy of fire insurance had not been manually delivered to the insured at the time of the loss will not bar recovery, if at that time it had become a binding contract.

In an action upon a policy of fire insurance, it appeared that defendant's local agent had in his possession policies signed by the president and secretary of the defendant which, as he effected insurance he had authority to fill, countersign and deliver. The local agent was also an insurance broker, and had a contract to keep the plaintiffs' property insured for a certain amount at a certain rate per cent. A short time prior to the expiration of the policy in suit, it appeared that plaintiffs were informed that a clause as to the storage of certain lumber would be inserted in the policies. The plaintiffs objected to the clause, and this objection was communicated to the local agent. Thereupon the agent wrote to the plaintiffs that he would make out the policy according to their wishes. Nine days afterwards and on the day before the fire, plaintiff wrote to the agent that on account of the question having been raised about the lumber clause, they had placed their insurance in another company. With this letter the plaintiffs returned the agent's bill which he had sent them in his previous letter. On the day following, which was the day of the fire, the agent wrote to the plaintiffs complaining of the action of the latter, and stating that he had written the policy without the lumber clause, in accordance with plaintiffs' request. On the day after the fire, the policy was obtained by the plaintiffs' treasurer from the agent's clerk, in the agent's absence, and without notice to either that a fire had occurred. As soon as the agent learned of the transaction, which was the same day, he notified the plaintiff that the defendant would recognize no liability on the policy, and demanded a return of the same. *Held*, that the court committed no error in giving binding instructions for defendant.

*Insurance—Contract—Meeting of minds of parties.*

As in case of any other contract to constitute a contract of insurance, the minds of the parties must meet and concur as to the terms.

*Insurance—Fire insurance—Acceptance of policy—Agent.*

Where a personal contract between a person claiming to be insured, and the local agent of the insurance company, who was also an insurance broker, does not take away from such person the right as against the insurance company to accept or reject a policy which the agent might induce the company to tender, such person, if he claims to be insured, under a policy tendered to him, must show that he accepted the policy, either by express evidence, or by circumstances from which acceptance may be reasonably inferred.

Argued Oct. 12, 1900. Appeal, No. 135, Oct. T., 1900, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., June T., 1896, No. 975, on verdict for defendant in case of The Penns-

burg Manufacturing Company v. The Pennsylvania Fire Insurance Company. Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before Willson, J.

In addition to the facts stated in the opinion of the Superior Court, it appeared that the contract between the plaintiff and H. C. Coleman was as follows :

" This agreement made and concluded the 16th day of July, 1895, by and between H. C. Coleman, of the Boro of Norristown, County of Montgomery, and State of Pennsylvania, of the first part and The Pennsburg Manufacturing Company of the boro' of Pennsburg, County and State aforesaid, of the second part, witnesseth :

" That the said party of the first part for the consideration hereinafter mentioned doth by these presents, covenant, promise, and agree to and with the said party of the second part, as follows, to wit :

" That the said party of the first part shall and will insure or cause to be insured and keep insured in good and reliable stock insurance companies for the period of one year from date, the manufacturing plant, consisting of building, machinery, mill-work and lumber, supplies, etc., owned by the party of the second part, and located upon a lot or piece of land in the boro' of Pennsburg aforesaid, to the extent of Ten Thousand Dollars, said insurance to cost the party of the second part Five Dollars for every hundred dollars of insurance.

" In consideration of the agreements, covenants, and stipulations herein set forth being kept by the said party of the first part, the said party of the second part agrees to pay or cause to be paid unto the said party of the first part the sum of Five Hundred Dollars sixty days from date, being an insurance of Ten Thousand Dollars at the rate of five per cent. as aforesaid.

" It is understood and agreed by and between said parties that if the said party of the first part can place said insurance at a lower rate than five per cent., the difference shall accrue to him; but if he shall be obliged to pay more than five per cent. to effect said insurance, the excess shall be borne by him.

" It is further agreed that the said party of the first part shall have the privilege of renewing said insurance year after year

upon the same terms, conditions, and stipulations as are herein set forth. This agreement to bind as well the heirs, administrators, executors and successors, and assigns of both parties as the parties themselves."

The court gave binding instructions for defendant.

*Errors assigned* were (1) excluding from evidence the contract between plaintiff and H. C. Coleman. (2) In giving binding instructions for defendant.

*Alexander Simpson, Jr.*, with him *John O. Bowman*, for appellant.—Where the agent is furnished with duly signed blank policies, he is a general agent of the company with all the powers as to making or renewing insurance or waiving breaches or forfeiture that are possessed by the company itself: Carroll v. Charter Oak Ins. Co. 40 Barb. 292; Kuney v. Amizon Ins. Co., 36 Hun, 66; Ellis v. Albany City Ins. Co., 50 N. Y. 406; Continental Ins. Co. v. Ruckman, 20 N. E. Repr. (Ill.) 77; Georgia Home Ins. Co. v. Kinnier, 28 Grattan, 88; Viele v. Germania Ins. Co., 26 Iowa, 9; Gloucester Mfg. Co. v. Howard Fire Ins. Co., 5 Gray, 497; Sanborn v. Fireman's Ins. Co., 16 Gray, 448; McCullough v. Hartford Fire Ins. Co., 38 W. N. C. 567.

Nonpayment of the premiums by the insured before the fire does not vitiate the policy: Riley v. Com. Mut. Fire Ins. Co., 110 Pa. 144; Elkins v. Susquehanna Fire Ins. Co., 113 Pa. 386; Lycoming Mut. Fire Ins. Co. v. Bedford, 2 W. N. C. 529; Universal Ins. Co. v. Block, 109 Pa. 535; Long v. North British, etc., Ins. Co., 137 Pa. 335.

In the present case the policy does not require payment of the premium as a condition precedent to its validity, but even if it did, a general agent, being vested with all the powers of the company itself, can waive that requirement: Riley v. Com. Mut. Fire Ins. Co., 110 Pa. 144; Elkins v. Susquehanna Fire Ins. Co., 113 Pa. 386; Lycoming Mut. Fire Ins. Co. v. Bedford, 2 W. N. C. 529; Universal Ins. Co. v. Block, 109 Pa. 535; Long v. North British, etc., Ins. Co., 137 Pa. 335.

Here it is admitted that the agent had agreed to give the insured ninety days' credit, and had so done prior thereto.

If by the course of dealing between the company and its agent, the latter is charged with the premiums on the effecting

of the insurance, that is equivalent to payment as between the
company and the insured: Mutual Life Ins. Co. v. Logan,
27 Ins. Law Jour. 937; Fidelity & Casualty Co. v. Willey,
80 Fed. Repr. 499; Continental Life Ins. Co. v. Ashcraft,
18 W. N. C. 97; Elkins v. Susquehanna Mut. Ins. Co., 113 Pa.
386; Lebanon Mut. Ins. Co. v. Hoover, 113 Pa. 591; Carson
v. Jersey City Ins. Co., 43 N. J. Law, 300; Bouton v. American
Mut. Life Ins. Co., 25 Conn. 542; Universal Ins. Co., v. Block,
109 Pa. 535.

The fact that the policy had not in fact been delivered by
the agent to the insured at the time of the loss does not bar
the recovery if it had become a binding contract: Dibble v.
Northern Assurance Co., 70 Mich. 1; Yonge v. Equitable Life
Assurance Society, 30 Fed. Repr. 902; Long v. North British,
etc., Ins. Co., 137 Pa. 335; Keim v. Home Mut., etc., Ins. Co.,
42 Mo. 38; Sheldon v. Conn. Mut. Life Ins. Co., 25 Conn. 207;
Newark Machine Co. v. Kenton Ins. Co., 50 Ohio, 549; South-
ern Life Ins. Co. v. Kempton, 56 Ga. 339.

And while true it is that where, as here, the insured has ob-
tained the policy from the company, or its agents, after the fire
and without notice thereof, he has not made a contract if one
did not already exist; yet if it did in fact exist, the obtaining
of the policy under such circumstances constitutes a valid de-
livery: Bragdon v. Appleton Mut. Fire Ins. Co., 42 Me. 259;
City of Davenport v. Peoria, etc., Ins. Co., 17 Iowa, 276; Home
Ins. Co. v. Curtis, 32 Mich. 402; Keim v. Home Mut. Fire
etc., Ins. Co., 42 Mo. 38; Baldwin v. Chouteau Ins. Co.,
56 Mo. 151, citing many cases, and holding that there was no
"obligation, either moral or legal, to inform the company of
the destruction of the insured building."

Under the contract and course of dealing between Coleman
and plaintiffs, Coleman had power to renew the insurance, inter
alia, in this particular company, if it could be done at a given
rate—and it was—and they became liable to him at the expira-
tion of ninety days according to agreement.

The difficulty which had arisen between them as to the thirty-
five foot clause had been adjusted June 30, 1896, three days
before writing the policy, and no objection was made by the
insured.

Under the course of dealing between Coleman and the de-

fendants, he was charged with and became liable to the company on countersigning the policy. This he had done, and so the contract was completed so far as the company was concerned.

Coleman, to whom alone plaintiffs were liable, refused to accede to any offer of cancelation of the existing contract, and hence, even if the plaintiffs had tried to cancel it, and thereby avoid liability for the premiums, his refusal to permit it made their attempts without legal effect: Pollock's Principles of Contract, * 537; Fire Assn. of Phila. v. Rosenthal, 108 Pa. 474.

*George Tucker Bispham*, with him *Sharswood Brinton*, for appellee.—The plaintiff was bound to prove affirmatively that there was a contract of insurance.

There was no affirmative act on the part of the plaintiff agreeing to take the policies after Coleman had rewritten them so as to leave out the thirty-five foot clause; on the contrary, there was a refusal so to do. That such an attempt is a gross fraud is not only plain from principle, but is shown by the following pertinent authorities: Piedmont, etc., Ins. Co. v. Ewing, 92 U. S. 377; Wales v. New York Bowery Ins. Co., 37 Minn. 106.

OPINION BY RICE, P. J., January 22, 1901:

Plaintiff declared in assumpsit on a policy of fire insurance dated July 3, 1896, which, it was alleged, was executed and delivered by the defendant to the plaintiff. The defendant pleaded non assumpsit. On the trial the plaintiff produced and offered in evidence the policy. This, with certain admissions, made on the trial, as to the occurrence of the fire, the sending and receipt of proofs of loss, and the amount of the loss, made a prima facie case for the plaintiff.

The defendant then proved, that, although the policy was executed by the defendant's officers and countersigned by its local agent, it was not delivered to the plaintiff by any one having authority from the defendant or its agent, but was obtained the day after the fire by the plaintiff's treasurer, from the agent's clerk, in the agent's absence, and without notice to either that a fire had occurred; also, that as soon as the agent learned of the transaction, which was the same day, he notified the plaintiff that the defendant would recognize no liability on the policy, and demanded a return of the same. No particular

form is required to effect a delivery of a deed or other writing. It may be by acts merely, by words merely, or by both combined, but in all cases an intention that it shall be a delivery must ·exist. It is unnecessary to discuss the ethics of the transaction by which the policy came into the possession of the plaintiff; it is sufficient to say that the undisputed facts above recited, rebutted the prima facies arising from the plaintiff's possession of the policy. See Piedmont, etc., Ins. Co. v. Ewing, 92 U. S. 377.

But it is contended, and as to this proposition also, there can be no serious dispute, that the fact that the policy had not been manually delivered by the agent to the insured at the time of the loss would not bar recovery, if at that time it had become a binding contract: Long v. North British, etc., Insurance Co., 137 Pa. 335. The vital question for our consideration, therefore, is, whether or not the plaintiff and the defendant were reciprocally bound according to the terms of the policy at the time of the fire, or, to be more precise, whether or not there was sufficient competent evidence in the plaintiff's favor to warrant a jury in finding the facts from which that legal conclusion would necessarily flow?

H. C. Coleman was the local agent of the defendant, and as such had in his possession blank policies signed by the president and secretary, which, as he effected insurance, he had authority to fill, countersign and deliver. He was also an insurance broker, and on July 16, 1895, entered into a contract with the plaintiff, which is set forth in full in the first assignment of error.

In fulfilment of his contract Coleman obtained insurance in various companies on the plaintiff's property, which the latter accepted. Among the policies was one issued by the defendant for $500. These were annual policies and expired in July, 1896. A short time before their expiration the negotiations to which we are about to refer began.

Jacob B. Hillegass, a friend of Coleman, consulted the plaintiff's officers relative to a renewal of this line of policies. There is no oral evidence as to what was said by Mr. Hillegass or the officers, or as to what Hillegass said to Coleman. We think, however, that it may be pretty clearly inferred from the correspondence. At any rate, in consequence of what Hillegass re-

ported, Coleman mailed to the plaintiff on June 30, 1896, the following letter:

"Gentlemen: Mr. Hillegass saw me to-day in reference to the thirty-five foot clause in your policy. We will make this policy cover as per your wishes. Will you kindly send check for the amount of statement as we desire to get same before I go away?"

The statement referred to was a bill for $500, being the amount of the premiums for $10,000 insurance to take the place of that about expiring. Amongst the policies mentioned in the statement was one for $1,000 in the defendant company. No immediate reply was made to this letter, and on July 8, 1896, Coleman wrote the plaintiff as follows: "Will you kindly return policies" (referring to policies issued the previous year and amongst them the policy issued by the defendant), "which you promised Mr. Hillegass you would send by mail Monday, as they were in the bank. At the same time please send check for statement, $500 recently rendered." On July 10, 1896, (the fire occurred that night) Coleman received the following letter written by the plaintiff's secretary:

"PENNSBURG PA., July 9, 1896.

"MR. H. C. COLEMAN,

"Norristown, Pa.,

"Dear Sir: Through your instructions to us—about the time our insurance was expiring—that we were obliged to keep our lumber thirty-five feet from the mill, we made an effort to have it placed through an agent who did not require us to conform to such rules, and having succeeded, the insurance has been placed. We enclose you your bill.

"Yours truly,

"PENNSBURG MANF'G. CO."

On the day of the receipt of this letter, Coleman mailed to the plaintiff the following letter, which in due course of mail could not have been received until July 11, the day after the fire.

"NORRISTOWN, PA., July 10th, 1896.

"PENNSBURG MANUFACTURING CO.,

"Pennsburg, Pa.

"Gentleman: I was very much surprised to receive letter of

July 9th, stating that you had secured your insurance through another agent on account of my asking whether a thirty-five foot clause on your lumber policy would be objectionable or not. I made this inquiry of you in three different letters, the first dated May 26th, asking whether this clause would be acceptable to you or not. To all my communications I have never received a reply.

" Mr. Hillegass conferred with you in reference to the matter, and at first advised me that the clause would be all right. I then wrote you that, after the interview with him, I had placed it on, and if it were not satisfactory to kindly advise me. The next week when Mr. Hillegass saw you he informed me that you preferred not to have the clause on, and I immediately wrote you, under date May" (June ?) " 30th, that Mr. Hillegass · had seen me, and that I had written your policy without the clause and as per your request.

" I renewed all these policies from July 1st, after much trouble and work at the rate of five per cent. When Mr. Hillegass saw you on July 4th, in reference to returning three of the old policies and also in reference to the bill which I rendered, you never intimated to him by word of mouth, nor to me by letter, nor in any other way that I should not renew these policies, and furthermore I have a contract with the Pennsburg Manufacturing Company signed by its president and secretary under seal, whereby I am authorized to renew said insurance yearly so long as I am enabled to secure a five per cent rate.

" The question of justice and injustice is so apparent in this case when the facts are recalled, that I feel sure that you will take the policies which I have placed on your plant and send me a check for the premium.

" I hold these policies subject to your instructions as to whether I shall send them to you or hand them over to Mr. Hillegass to be delivered to you as I did last year.

" Yours truly,<br>" H. C. COLEMAN."

After the fire, as shown by their subsequent correspondence, Coleman and the plaintiff were no more of one mind than they appear to have been before the fire, the former insisting that no contract was in force at the time of the fire, and the latter in-

sisting that a contract was formed on July 1. This evidence of their exchange of positions is important only as showing that men's views as to the legal effect of their transactions with others are often affected by their interests, and this is a consideration not to be ignored in examining the correspondence we have quoted.

As we interpret Mr. Coleman's letter of July 10, it was not an acceptance by the defendant through its agent of an offer previously made by the plaintiff, but was a recital of facts from which Mr. Coleman inferred that the plaintiff was under obligation to take the policies he had procured and to pay the premiums. It did not create a contract nor give vitality to the policy that was then lying in the agent's office. True, it contained a tender of the policy, but the attempt, after the fire, to accept this offer was admittedly too late to be efficacious. The question is, what was the status of the parties before the fire? Was the alleged contract of insurance in force at that time? Nothing that the plaintiff did or attempted to do after the fire changed that status. Nor was the letter full proof of a preexisting contract; in other words it did not prove, that, at some point of time before the date of the letter, the insurance stipulated for in the policy had been accepted by the plaintiff, and that the latter had assumed an obligation to pay the defendant the premium. Even conceding that in the letter of July 10, Mr. Coleman was speaking for the defendant, which is by no means clear, and had authority so to do, proof of his inferences and declarations did not dispense with other proof of the facts essential to the creation of a contract of insurance.

Nor was that proof supplied in the previous correspondence. Coleman's letters of June 30 and July 8, are to be read in connection with the defendant's letter in reply written on July 9. It is plainly to be inferred from them that in the course of the negotiations the plaintiff was informed that a clause requiring it to store its lumber thirty-five feet from its mill would be inserted in the policies; that the plaintiff objected to taking insurance with that restriction; that this objection was communicated by Mr. Hillegass to Mr. Coleman; whereupon the latter wrote the letter of June 30, proposing to write policies with that clause omitted; and that this proposition was in effect rejected by the plaintiff in the letter of July 9. But it is said,

that the plaintiff's secretary was not authorized by the board of directors to write that letter, and that, even if he had been authorized, his act would have been inefficacious to break an existing contract.   The latter branch of this proposition, namely, that if the policy of insurance was in force when that letter was written, the plaintiff could not change the status without the assent of the other party to the contract, must be conceded. But we are not convinced that proof that the secretary of the plaintiff company was not expressly authorized by the board of directors to write the letter warrants us in wholly excluding it from consideration.   For, it is to be noticed, it was sent in reply to the two letters addressed to the company; it returned the bill inclosed in the first of those letters—an act which, even if it had been accompanied by no explanation, would have been significant—and the fact stated in it that the plaintiff had obtained insurance elsewhere, was established by other evidence. To say the least, it was sufficient to rebut any possible presumption from silence of the plaintiff's assent to the proposition contained in the letter to which it was a reply.   As to the question of a presumption of assent arising from mere silence, we refer to Royal Ins. Co. v. Beatty, 119 Pa. 6.

We come then to the question, whether or not Mr. Coleman's letter of June 30, followed by his filling and countersigning the policy, and reporting the same to his principal, the defendant, concluded the negotiations and formed a contract' of insurance between the parties named in the policy?   Contract is formed by the acceptance of an offer.   When the offer is accepted it becomes a promise; till it is accepted neither party is bound.   Acceptance is necessarily irrevocable, for it is acceptance that binds the parties.   In applying this elementary principal to the case at bar, it is to be borne in mind that the burden of proving these essentials to the formation of a contract rested on the plaintiff.   No presumption of their existence arises from the fact that the policy was filled, signed and countersigned, and ready for delivery.   If the plaintiff was not under contract obligation to the defendant, the defendant was not bound.   As we have already suggested there is no competent and sufficient evidence that the negotiations had reached a point where the plaintiff offered to take a policy issued by the defendant.   The evidence does show that they had reached a point where the

plaintiff objected to a policy restricting it as to the place of keeping its lumber. The true interpretation of the letter of June 30 is that the defendant's agent then expressed a willingness, perhaps more, an intention, to deliver a policy without that restriction; but that offer was not accepted. As in the case of any other contract, to constitute a contract of insurance, the minds of the parties must meet and concur as to the terms. Some learned writers hold that the law does not require contracting parties to have a common intention but only to seem to have one, that the law must needs regard not the will itself, but the will as expressed, while others hold that the law does require the wills of the parties to be at one, but that when men present all the phenomena of agreement, they are not allowed to say that they were not agreed: Anson's Law of Contract, Huffcut's Ed., *9, note. So far as practical results are concerned, certainly so far as they are concerned in the present case, this difference of theory is immaterial. Looking at the evidence admitted on the trial, we are compelled to the conclusion that at no point of time did the parties have a common intention, or seem to have one, as to the matter in litigation. A very careful study of Long v. North British, etc., Ins. Co., 137 Pa. 335, a case particularly relied on by the plaintiff's counsel, has failed to convince us that it rules this case. It certainly does not rule, that to constitute a contract of insurance, it is not necessary that there be a meeting of minds, and that the insurance company may be bound to pay the loss, if one occurs, although the insured has assumed no binding obligation to pay the premium. The question was as to the meaning of spoken words construed in the light of the previous course of dealing between the parties; and, as they were susceptible of being construed as an acceptance of the company's proposition, the question was for the jury. There were other circumstances in that case which plainly distinguish it from the present. No principle was announced which is in conflict with anything we have said.

The only remaining question is as to the admissibility of the contract of July 16, 1895. The defendant was not in any sense a party to that contract. It created no obligation which either of the parties to this action could enforce against the other. Unquestionably, if Coleman performed his part of the contract

and the plaintiff refused to perform its part, it would be liable to him in damages.   But as we construe the contract the plaintiff did not surrender its right, as against the insurance companies, to accept or reject the policies Coleman might induce such companies to tender.   If we are correct in this conclusion, it follows, that to make a complete contract of insurance between the plaintiff and the insurance company of which he was agent, it was necessary to show the plaintiff's acceptance, either by express evidence or by circumstances from which it might have been reasonably inferred.   In other words, Coleman could not cut short negotiations between him and the plaintiff as to the terms of the contract, and, eo instanti, bind the plaintiff by filling up and countersigning a policy.   We will not prolong this opinion by further discussion.   We all are of opinion that if the contract of July 16, 1895, had been admitted in evidence, it would not have changed the result.

The judgment is affirmed.