Barry, Appellant, *v.* Aetna Insurance Company.

184

Argued April 13, 1951. Before STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Norman Snyder,* with him *James A. Cochrane,* for appellants.

*Fronefield Crawford,* with him *William J. Mac-Carter, Jr.,* and *MacCarter & Crawford,* for appellee.

OPINION BY MR. JUSTICE LADNER, June 27, 1951:

Plaintiffs brought an action in assumpsit on a fire insurance policy. This case has been tried three times. The first trial resulted in a verdict for the plaintiffs. A new trial was granted. The second trial resulted in a directed verdict for the defendant. Again, a new trial was granted and at this trial a verdict was rendered for the plaintiffs and another new trial was granted. It is this last grant of a new trial which is assigned as error in the plaintiffs' appeal now before us.

We must first observe that the trial judge did not base the grant of a new trial on the ground that the verdict was against the weight of the evidence, but

filed the following certificate as the sole reason for the award: "I, HENRY G. SWENEY, Judge of the Court of Common Pleas of Delaware County, Pennsylvania, who tried the above case as of No. 1102, December Term 1947, hereby certify that, but for my interpretation of law relating to the extension of credit and the course of conduct of the dealings between the parties in this case as applied to the facts adduced at the trial I would not have granted a new trial."

On July 14, 1947, plaintiffs were the owners of two farms in Bethel Township, Delaware County. These properties were on Naaman's Creek Road and Larkin Road. On that date the barn on the Larkin Road property was struck by lightning and destroyed by fire. This is a suit to recover on a fire insurance policy allegedly issued and effective on that property on that date.

The plaintiffs proved the policy which was dated *July 3, 1947,* and delivered to the plaintiffs on July 15, 1947. They also proved that the premium was $45.50, $40.00 of which was paid July 14, 1947, and the balance paid the next day. Plaintiffs also introduced into evidence other policies on the Larkin Road property and also on the Naaman's Creek Road property together with the receipts for the payment of the premiums.

The *uncontradicted* but *partly oral* proof of the *defendant* showed the following facts: The fire started at 2:10 P.M. on the 14th of July, 1947. John Barry, a son of the plaintiffs, was at the fire and left about 4:00 P.M. He came to the office of Sweeney and Clyde, the admitted *agents* of the defendant, at 4:30 P.M., made application for a renewal policy on the Larkin Road property and paid $40.00 of the premium. He did not disclose the existence of the fire. Plaintiff Stephen Barry appeared the next morning and paid the balance

of the premium and also did not disclose that a fire occurred.

The following is a summary of the evidence of the previous dealings between plaintiffs and defendant's agent, as appears from the testimony of defendant's witness in direct or on cross-examination.

As to the Naaman's Creek Road property, it was shown to have been first insured April 9, 1945. A policy was issued the same date, which was effective as of the same date and the premium paid same date except for $3.75 which was paid July 2, 1945. That policy expired April 9, 1946. On May 27, 1946, a new policy was issued, effective May 27, 1946, the premium of which was paid on May 27, 1946. The second policy expired May 27, 1947. On July 15, 1947, a new policy was issued, dated back to May 27, 1947, the premium of which was paid July 15, 1947.

The Larkin Road property (the barn which burned) was first insured July 3, 1945, and the premium was paid on the same date. The policy was also effective on the same date. The first policy expired July 3, 1946. A new policy, dated July 3, 1946, was mailed to plaintiffs prior to July 3, 1946, with bill dated June 5, 1946, which was paid July 25, 1946. The second policy expired July 13, 1947. The policy in suit was issued July 14, 1947, dated back to July 3, 1947. Forty dollars of the premium was paid July 14, 1947, and the balance was paid July 15, 1947. From this it was reasonably inferable that the custom or the practice of the agent was to date back policies issued on credit but not when the transaction was cash.

The issues in this case are complicated by the fact that plaintiffs' proof of the policy, its date and its delivery apparently made out a case sufficient to go to the jury so that the jury could find for him despite the oral uncontradicted evidence of the defendant regard-

ing the circumstances of the issuance of the policy. In such circumstances the trial judge although he found that there was insufficient evidence of an extension of credit, concluded that he could not grant defendant's motion for judgment n.o.v., but did grant the motion for a new trial.

It is, of course, a settled rule of insurance law that where a loss, occurring before the risk attaches, is known only to the applicant and he obtains a policy without disclosing the fact of the loss, the policy is void even though the contract be given a date prior to the loss. However, this rule has been modified in its strictness where the policy is a renewal policy and there has been a course of dealing between the insurance agent and the insured from which it may be found that a continuance of insurance was intended or credit extended: *Long v. Insurance Co.*, 137 Pa. 335, 350, 20 A. 1014 (1890); *Lebanon Mut. Ins. Co. v. Hoover, Hughes & Co.*, 113 Pa. 591, 8 A. 163 (1886).

The issue for us to determine is exceedingly narrow and resolves itself to the question whether there was sufficient evidence in this case to warrant its submission to the jury. The trial judge thought not because there was only one extension of credit in the six policies issued. The verdict of the jury should be allowed to stand. Having issued the policy and having *dated it back,* the burden shifted to the defendant to prove a state of facts which entitled it to avoid or cancel the policy for that has been held to be an affirmative defense which the company is bound to prove: *Walker & Kavanaugh v. Lion Ins. Co.*, 175 Pa. 345, 34 A. 736 (1896).

Aside from the witnesses as to the time of the fire, the only witness by which the defendant sought to avoid the policy was defendant's insurance clerk, Anna Frank. She testified in substance that the plaintiffs

had no credit and they extended none. But this witness also testified that when credit is extended they usually mail the policy together with a bill and the policy is dated the *same day that the policy expires.* When no credit is extended the transaction is regarded as a cash transaction and the policy is then dated *when the premium is paid* irrespective of the date of the expiration of the former policy. Also in such case an expiration notice is mailed 30 days before expiration.

The prior policy issued July 3, 1946, which expired July 3, 1947, on the property where the fire occurred, was mailed to the plaintiff with a bill *before* the expiration of the 1945 policy date and this action belies the statement of the witness that plaintiffs had no credit. The question narrows down to whether the jury was bound to believe what the witness said, where her own records contradicted her or at least did not support her. She said she sent an expiration notice before the expiration date, July 3, 1947, but she did not produce a record to support that fact, nor does any explanation appear why copy of said notice was not produced, though copy of such notice as to the Naaman's Creek Road property was produced. Next, she could not explain except by saying it was a mistake, why if the plaintiff had no credit and his transaction with defendant was cash merely, she did not date the policy July 14th, when the bulk of the premium was first paid, instead of dating it back?

While this is a close case we think it was a question for the jury, because the transaction possessed all the indicia of an extension of credit or course of dealing, where the plaintiff had a right to believe the policy would be again renewed on credit as was the one that expired. While the action of the plaintiff, Stephen Barry, in sending to defendant the premium after the fire started seems censurable, yet this rushing in to

pay the policy became a matter of no importance once the jury found the plaintiff had a right to rely on a customary extension of credit confirmed by issuing a policy dated back to the expiration date of the prior one.

The order awarding a new trial is reversed and the record remanded for entry of judgment on the verdict.